Vandyke Johnson
Plaintiff Pro-Se
520 West 158th Street
Apt 6D
New York, NY 10032
(646)-265-6095
teknoman24@gmail.com

**14 CV 09602**



RECEIVED

NOV 2 8 2014

PRO SE OFFICE

UNITED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VANDYKE JOHNSON, ) | |
| ) | |
| Plaintiff, ) | Civil Action No.:_____ |
| ) | |
| vs. ) | **FEDERAL CIVIL RIGHTS** |
| ) | **COMPLAINT FOR WRONGFUL** |
| ) | **CONVICTION; VIOLATION OF** |
| NEW YORK CITY POLICE DEPARTMENT; ) | **PLAINTIFF'S DUE PROCESS** |
| DET. MARK FISHSTEIN, SHIELD NO. ) | **RIGHTS UNDER THE 5TH** |
| 2352; P.O. JOHN RUSSO, SHIELD NO. ) | **AMENDMENT AND 14TH** |
| 30922; P.O. DAVID DENIZARD, SHIELD ) | **AMENDMENT; FABRICATION** |
| NO. 2886; SGT. DAVID CHUNG, SHIELD ) | **OF EVIDENCE; FRAUD; AND** |
| NO. 1738, individually and as members ) | **NEGLIGENCE; 42 U.S.C. § 1983** |
| Of the New York Police Department; ) | |
| CYRUS R. VANCE JR., District Attorney, ) | |
| New York County, in his official capacity; ) | |
| ASSISTANT DISTRICT ) | |
| ATTORNEY KAREN EDELMAN CLARKE; ) | |
| NEW YORK CITY DEPARTMENT OF ) | |
| PROBATION; and PROBATION OFFICER ) | |
| ELLEN WATSON-SUBER; and the ) | |
| CITY OF NEW YORK. ) | |
| ) | |
| ) | |
| Defendant(s). ) | |
| ) | |

The Plaintiff, Pro – Se, Vandyke Johnson, residing in the State of New York, at 520

West144th Street, Apt 31, New York, New York 10031, say by way of complaint:

1

## JURISDICITION AND VENUE

1.     This is a civil action seeking damages against the Defendant(s), **NEW YORK CITY POLICE DEPARTMENT** (herein "NYPD"); DET. **MARK FISHSTEIN**, SHIELD NO. 2352 (herein "DET. FISHSTEIN"); P.O. **JOHN RUSSO**, SHIELD NO. 30922 (herein "P.O. RUSSO"); P.O. **DAVID DENIZARD**, SHIELD NO. 2886 (herein "P.O. DENIZARD"); P.O. **DAVID CHUNG**, SHIELD NO. 1738, (herein "P.O. CHUNG"), **CYRUS R. VANCE JR.,  CITY OF NEW YORK, ASSISTANT DISTRICT ATTORNEY KAREN EDELMAN CLARKE**, (herein "A.D.A. Clarke"); **NEW YORK CITY DEPARTMENT OF PROBATION**; and, **PROBATION OFFICER ELLEN WATSON-SUBER**, who are all employed and reside in the State of New York, for committing acts, under color of law, which deprived the Plaintiff's rights, secured under the U.S. Constitution, and the laws of the State of New York and the United States. The Court have jurisdiction of this action under 28 U.S.C. § 1331, § 1343(a), (1), (2), (3), (4), 5th Amendment of the United States Constitution and the 14th Amendment, and 42 U.S.C. § 1983.

2.     Venue is proper in this district under 28 U.S.C. § 1391(b) in that all claims arose in this district.

## PARTIES

**PLAINTIFF**

3.     The Plaintiff, Pro – Se, Vandyke Johnson (herein "Plaintiff") is a citizen of the United States and resides in the State of New York. The place of residence of the Plaintiff is 520 West 144th Street, New York, New York, 10031, Apt 31.

## DEFENDANTS

4.      The Defendant(s) New York City Police Department (herein "NYPD") is an agency of the City of New York existing under the laws of the State of New York and maintaining its principal place of business at One Police Plaza, New York, N.Y. 10038.

5.      The Defendant(s) **Det. Mark Fishstein, Shield No. 2352,** at relevant times, was and still is, employed by the Defendant(s), NYPD and the City of New York.

6.      The Defendant(s) **P.O. John Russo, Shield No. 30922,** at relevant times, was and still is, employed by the Defendant(s), NYPD and the City of New York.

7.      The Defendant(s) **P.O. David Denizard, Shield No. 2886,** at relevant times, was employed by the Defendant(s), NYPD and the City of New York.

8.      The Defendant(s) **Sgt. David Chung, Shield No. 1738,** at relevant times, was employed by the Defendant(s), NYPD and the City of New York.

9.      The Defendant(s) **Cyrus R. Vance Jr.,** is the elected District Attorney for the borough of Manhattan and is responsible for the supervising and training and policy making for all subordinate Manhattan Assistant District Attorney(s), which includes the legal requirement of providing notice of exculpatory evidence to the State Court of New York and Defense, otherwise known as *Brady* material.

10.     The Defendant(s) **Assistant District Attorney Karen Edelman Clarke** is and was at all times relevant to the case in controversy. ADA Clarke is an agent for the State of New York, in charge to prosecute offenders who violate New York State law penal code and also mandated by Federal Law to turn over any and all Brady material that exonerates accused of a crime in controversy.

3

11.     The Defendant(s) **New York City Department of Probation** is and was at all times relevant to the case in controversy. The NYC Department of Probation is a department of the government of New York City responsible for providing supervision for adults and juveniles placed on probation by judges in the Supreme, Criminal, and Family Courts.

12.     The Defendant(s) **Probation Officer Ellen Watson-Suber** is and was at all relevant times present in the case in controversy and is employed by the City of New York. Probation Officers are responsible for preparing background reports that assist judges in determining appropriate sentences for adult offenders and juvenile delinquents.

13.     The Defendant(s) **City of New York** is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department which acts as its agents in the area of law enforcement and for which it is ultimately responsible.

## NOTICE OF CLAIM

14.     Plaintiff filed a timely Notice of Claim against the City of New York, New York City Department of Probation, and Probation Officer Ellen Watson-Suber.

15.     The City assigned a claim number to the Plaintiff's claim, and Plaintiff was subjected to an examination pursuant to N.Y. Gen. Mun. L. Sec. 50-h on the 4th day of September 2013.

16.     To date, no answer has been received by Plaintiff and no compensation has been offered by Defendant City of New York in response to this claim.

17.     This action has been commenced within one year and ninety days of the date of occurrence of the events giving rise to this Complaint. See Exhibit $A$

## DUE PROCESS VIOLATION REQUIRES NO NOTICE OF CLAIM FILING

18.     Plaintiff states to the Honorable Court that because there is evidence of innocence and an alleged Brady Violation committed by the remaining Defendant(s), and the inducement of fraud and fabrication of evidence to secure a guilty plea, a notice of claim against the remaining Defendant(s) is not required for Due Process violations of the 5th and 14th Amendments of the United States Constitution. The occurrence of events to this portion of the Complaint is 11 years and this is no statute of limitation for Brady violation(s), fraud, and manufacturing of evidence.

## STATEMENT OF FACTS

19.     On the 7th day of November 2002, the Plaintiff went to work out at the New York Sports Club on 51st and Lexington at or around 8:45 am. During that time, New York Sports Club on 51st and Lexington had video surveillance cameras upon entering the gym and at the concierge. Plaintiff was a member of the gym and used the gym facility to do a light workout, used the steam room and shower and left the gym at 9:45am on the 7th day of November 2002.

20.     Plaintiff then took the train and got off at Astor Place and headed to an Internet Café called WEB2ZONE, which is now out of business, to download documents and search the internet at the time. At or around 12pm on the 7th day of November 2002, Plaintiff went to Wendy's at Rockefeller Center to eat and read newspapers. After finishing lunch, Plaintiff went back to the New York Sports Club on 51st and Lexington Avenue, to use the steam room.

21.     Plaintiff finished using the steam room and notices a credit card or ATM card left behind in an empty locker. While putting on his clothes, Plaintiff took the card, with the

intent of notifying the employees at the New York Sports Club, located at the concierge;

an ATM was left behind in the locker room. Before the Plaintiff could inform the

employee(s), Plaintiff was confronted by 4 NYPD Detectives.  See Exhibit _B_

22.        Plaintiff was questioned by **DET. MARK FISHSTEIN, SHIELD NO. 2352;**

**P.O. JOHN RUSSO, SHIELD NO.30922; P.O. DAVID DENIZARD, SHIELD**

**NO. 2886; and SGT. DAVID CHUNG, SHIELD NO. 1738**; all at the time working at

the 17th Precinct of the New York City Police Department.

23.        Plaintiff was approached and asked several questions by the **Detective Mark**

**Fishstein.** Plaintiff at the time replied and complied with **Detective Fishstein** requests.

Plaintiff was asked about the credit card or ATM in his hand and Plaintiff said that it was

being brought to the front desk. Plaintiff was informed by Detective Fishstein that he was

under arrest.

24.        Plaintiff questioned the Detective why was being under arrest and was trying to

put away his cell phone. One of the officers, **John Russo** or **David Denizard**, punched

the Plaintiff in the face, while the other officers brought the Plaintiff to the ground. The

Plaintiff was repeatedly hit about 9 or 10 more times by John Russo or David Denizard.

Detective Mark Fishstein stated to the Plaintiff, in the Plaintiff's specific memory "stop

struggling or you'll be maced!" Sgt. David Chung knee was in the Plaintiff's groin area

causing pain. The beating caused by the members of the 17th Precinct to the Plaintiff

lasted for about a few minutes.

25.        Plaintiff was not taken to the hospital on the 7th day of November 2002; Plaintiff

wrote a statement on the whole account of the incident including the beating. Plaintiff

was released on November 8, 2002 and went to Bellevue hospital on November 9, 2002

to have his injuries examine by a doctor. Plaintiff was also photographed by the hospital's social worker to use the photographs as evidence (photographs were never retrieved or found). See Exhibit ___C___

26.     Plaintiff was unaware of **New York State Judge Rena Uviller** decision on the 26th day of February 2003 and Order in regards to the criminal matter of the Plaintiff. Plaintiff was unaware of the Defense Counsel put in motions on the Plaintiff's behalf, Plaintiff was unaware of the hearings granted, and **Judge Uviller** reminded Assistant District Attorney of their obligation under Brady. See Exhibit ___D___

27.     On the 16th day of July 2003, Plaintiff reluctantly plead guilty rather than face trial and a possibility of serving seven (7) years in New York State Prison, to Assault in the 2nd Degree (Penal Law § 120.05(3), in which the Plaintiff was forced to admit untrue statements on the day in question in order to receive a no jail sentence of Probation. The felony on the Plaintiff's record is permanent. By pleading guilty, Plaintiff had no idea that the plea deal would disenfranchise the Plaintiff from voting, possible lucrative job prospects, and being classified as a "second class citizen". See Exhibit ___E___

28.     During the criminal phase of the Plaintiff, **Assistant District Attorney Karen Edelman Clarke** was aware of the arrest of the Plaintiff. The Assistant District Attorney picked up the case against the Plaintiff representing the State of New York, was aware of the NYPD officers involvement as well as the motion that was put in the Plaintiff's former defense attorney, Joseph Conza, from the New York Defenders Services, requesting information into the NYPD's Officer(s) involvement as well as stating to the Assistant District Attorney that the Plaintiff was beaten while in custody.

29.     The 4 Defendant NYPD Officers was aware of a video surveillance inside of the New York Sports Club on 51st and Lexington, which would have showed the beating of an unarmed black man but is unsure if the Assistant District Attorney knew or should have known if there was a videotape that shows the beating.

30.     During the Plaintiff's sentence of Probation, on the 15th day of November 2007, Plaintiff put in a 440.30 motion to vacate the sentence of not only vacating the conviction on grounds of Ineffective Assistance of Counsel but also provided documentary proof from Bellevue hospital that the Plaintiff was beaten at the time at the hands of the New York Police Department. The Judge in the State of New York denied Plaintiff's 440.30 motion to vacate the conviction.

## DEPARTMENT OF PROBATION

31.     After the Plaintiff finished serving the 5 year imposed Probation in the year of 2008, Plaintiff applied for a Certificate of Relief from Disabilities to restore the Plaintiff from "second class citizenship" on or around January 2013. Plaintiff received a letter from Defendant Probation Officer E. Watson-Suber, informing the Plaintiff of a warrant in the State of New Jersey on the 4th day of March 2013.

32.     Plaintiff called and informed the Defendant Probation Officer that the Plaintiff have documentary proof that contradicted the warrant that is supposedly to be out for the Plaintiff in the State of New Jersey. Defendant refused to see or hear the Plaintiff's documentary evidence; therefore Defendant misrepresented facts to the original Judge of the Plaintiff's probation case, Rena Uviller, to cause the Plaintiff to be placed in "second class citizenship".

33.        Plaintiff informed the Defendant that she did not meet with the Plaintiff nor

accepted any original state court Documents that contradicts the Defendant's findings.

Nevertheless, the Defendant ignored the Documents of the Plaintiff.

## THE SEARCH FOR DOCUMENTS

34.        On or about May 7, 2014, the Plaintiff begins to request documents at 100 Centre

Street, on the 10th Floor, pertaining to the November 7, 2002 incident and to thoroughly

look into the paperwork that lead to the Plaintiff's untruthful plea of guilty in exchange of

no jail sentence with a 5 year probation. Plaintiff while searching through the court

records, found out in the documents, that the NYPD Defendants from the 17th Precinct,

Detective Mark Fishstein, fabricated evidence and injuries. The NYPD Defendants

covered up the wrongful beating of the Plaintiff by falsifying on the Felony Complaint

that the NYPD Defendants themselves were beaten the Plaintiff, NYPD Defendants then

fabricated and falsified the injuries of Assault by the Plaintiff, and used the Plaintiff's

injuries that were factually caused by the NYPD Defendants, to state on the Felony

Complaint that the Officers present was injured during the arrest of the Plaintiff. On the

Felony Complaint the Defendant Mark Fishstein writes: "Deponent states that he is

informed by Det. Russo that informant Russo did suffer a red and swollen lump on his

nose causing informant Russo substantial pain" and on the Plaintiff's medical report on

the physician's notes: "took arm and pulled, strained L (left) shoulder, punched in face,

bruise from tight hand cuffs, fell on knee, knee to groin…"

35.        The Defendant Mark Fishstein continues to write on page 2 on the Felony

complaint: "Deponent states that his is informed by Det. David Denizard that informant

Denizard did suffer substantial plain to his shoulder requiring medical treatment and that

said pain may be a torn ligament of soft tissue of the shoulder". The NYPD Defendant's fabricated this statement because the Plaintiff provide a medical report that shows the NYPD Defendant's used the Plaintiff's injures as if they was their own injuries to justify an conviction. NYPD Defendants was not injured nor was they were attacked. NYPD illegally fabricated evidence and injuries when they illegally and viciously assaulted the Plaintiff.

36.    Plaintiff later learns from the court records pertaining to the November 7, 2002 incident, from the Court official, that there is no police report in the file as well as there is no medical records documenting the "injuries" claimed by the Defendant(s) Police Officers.

## PLAINTIFF'S INJURIES AND DAMAGES

37.    As a direct, proximate, and reasonably foreseeable consequence of the aforementioned actions by the defendants, plaintiff:

   a) Was denied his state and federal constitutional rights and liberties;

   b) Suffered permanent mental and emotional injuries as well as temporary physical injuries caused by the defendants;

   c) Was publicly shamed, disgraced, ridiculed and humiliated and suffered damage to reputation;

   d) Suffered lost wages and permanent impairment of earning capacity; and

   e) Incurred other items of attendant damages.